# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

NICHOLAS DEAN,

      Plaintiff,

v.

CHARLES EASTERLING , *et al.*,

      Defendants.

Case No. 3:19-cv-566-TJC-JRK

## DEFENDANT EASTERLING'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant Charles Easterling, though undersigned counsel, submits this motion to dismiss and incorporated memorandum of law pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure.

This Court should dismiss all claims against Mr. Easterling because he is not subject to personal jurisdiction in the state of Florida; this district is an improper venue  as all  allegations in the Complaint relate to events that occurred in Louisiana; Louisiana law applies to Plaintiffs' defamation claims, and all claims are time-barred under Louisiana's one-year statute of limitations for defamation.

Plaintiffs' claims are substantively flawed as well.  The gravamen of the Complaint is a claim for defamation based on statements that are protected opinion under the U.S. Constitution and Florida law and are simply not defamatory. Plaintiff's tag-along tort claims for tortious interference, intentional infliction of emotional distress, and assault, all based on the same

alleged defamation, are barred for the same reasons as the defamation claims.   For these and other reasons explained below, the Complaint should be dismissed.

## FACTUAL INTRODUCTION

This case is filed in the wrong Court. It arises entirely out of a sequence of events that occurred more than two years ago and more than 500 miles away in Louisiana. The case's only connection with Florida is that Plaintiff moved here at some point after all events outlined in the Complaint.  He likely chose this forum because the Louisiana statute of limitations on his claims has now expired.

This case arises out of the alleged termination of Plaintiff Nicholas Dean from his position as principal of Crescent Leadership Academy in New Orleans, Louisiana. Doc. 1 at ¶¶ 12, 21, 27, 123. According to the Complaint, Plaintiff lost his job on May 30, 2017, three weeks after he attended a March 7, 2017 "public protest of the removal of Confederate Monuments in New Orleans, Louisiana[.]" Doc. 1 at ¶¶ 25, 50.  At that protest Plaintiff "chose to stand in physical proximity with and offer protection to the nonviolent persons assembled." Doc. 1 at ¶ 62.

The Complaint further alleges that Defendant Charles Easterling posted videos and comments from the protest featuring Plaintiff to Facebook and YouTube on May 25, 2017. Doc. 1 at ¶¶ 19-27. Later that same day, the news web site nola.com, affiliated with the New Orleans Times-Picayune, posted an article titled, "New Orleans principal loses job after wearing Nazi-

associated rings in video."[1] Doc. 1 at ¶ 28.  Plaintiff blames Mr. Easterling for his termination, alleging that Mr. Easterling's Facebook post and YouTube video "were of direct cause to Dean's eventual termination from employment at Crescent Leadership Academy." Doc. 1 at ¶ 27.

Notably absent from the Complaint are any allegations connecting this case to the State of Florida. Mr. Easterling is a New Orleans resident. Doc. 1 at ¶ 10. At the time of the New Orleans protest, Plaintiff was a resident of New Orleans. Doc. 1 at ¶ 133. The Times-Picayune is a New Orleans newspaper. Doc. 1 at ¶ 11. Indeed, the "facts" section of Plaintiff's Complaint has little mention of Florida, beyond the bare assertion that Mr. Easterling's Internet posts "became available to persons in this district[.]" Doc. 1 at ¶¶ 46-47. Plaintiff does not even allege that he or any Floridian actually accessed or viewed the posts here. Instead, he merely states that "[o]n information and belief, members of the public in the state of Florida viewed Defendant Easterling's May 25, 2017, public Facebook Post and YouTube Video." Doc. 1 at ¶ 54. That is the sum total of the basis upon which Plaintiff rests his bid for this Court's jurisdiction.

## LAW AND ARGUMENT

**I.      This Complaint Should Be Dismissed under Rule 12(b)(2) Because Mr. Easterling is Not Subject to Personal Jurisdiction in This Court.**

Federal Rule of Civil Procedure Rule 12(b)(2) requires dismissal of an action when the court lacks personal jurisdiction over the defendant. In order to determine whether personal jurisdiction exists over a defendant, the Court must engage in a two-part inquiry. *St. Johns Vein Ctr., Inc. v. StreamlineMD LLC*, 347 F. Supp. 3d 1047, 1067 (M.D. Fla. 2018) (citing *Mut. Serv.*

---

[1] Danielle Dreilinger, *New Orleans principal loses job after wearing Nazi-associated rings in video*, NOLA.COM/THE TIMES-PICAYUNE, May 25, 2017, available at: https://www.nola.com/news/education/article_1ed3b635-cc0a-5593-9925-d89eeff8aa71.html (last visited September 6, 2019).

*Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004)). First, the Court must determine "whether the exercise of jurisdiction is appropriate under [Florida]'s long-arm statute." *Id.* (citing *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626 (11th Cir. 1996)).

Second, the Court must consider whether exercising personal jurisdiction "would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Sculptchair, Inc.*, 94 F.3d at 626). "Only if both prongs are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Id.* (citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996) (internal quotations omitted).

Plaintiff has not satisfied either prong of this test, and the Court therefore lacks personal jurisdiction over Mr. Easterling.

### A.     Personal Jurisdiction Is Not Appropriate Under Florida's Long-Arm Statute

As a threshold matter, this Court's exercise of personal jurisdiction over Mr. Easterling is not appropriate under Florida's long-arm statute. As noted, Mr. Easterling is a resident of New Orleans, Louisiana, and Plaintiff's claims arise from activities that wholly took place in New Orleans, Louisiana. Plaintiff asserts that Florida's long-arm statute subjects non-residents to jurisdiction "if they commit a tortious act within the state." Doc. 1 at ¶ 3 (citing Fla. Stat. Ann. § 48.193(1)(a)(2)). All of the allegedly tortious activity cited in Plaintiff's Complaint occurred in Louisiana.

The Complaint expressly relies on *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1214 (Fla. 2010), as the basis for personal jurisdiction under the "tortious act" prong of the Florida long arm statute.   Doc. 1 ¶ 5.   That case provides that, in cases alleging defamation over the internet, "the material posted on the website about a Florida resident must not only be accessible in Florida, but also be accessed in Florida in order to constitute the commission of the tortious act of defamation within Florida under section 48.193(1)(b)."   *Internet Sols. Corp.*, 39 So. 3d at 1214.

Plaintiff's Complaint falls short of the *Internet Solutions* standard for two reasons.   First, at the time of the alleged defamation, Plaintiff, by his own admission, *was not a Florida resident*. *See* Doc. 1 ¶ 133 (describing Plaintiff moving to Florida *after* the events in question).   The rule set forth in *Internet Solutions*, however expansive, by its express terms applies only to Florida residents.   *See Vorbe v. Morisseau*, No. 1:14-CV-20751, 2014 U.S. Dist. LEXIS 198969, at *9 (S.D. Fla. Aug. 27, 2014) ("Given the language of the *Internet Solutions* opinion discussing Florida residents, the Undersigned concludes that obtaining jurisdiction over a nonresident defendant in a defamation case involving publication on a website likely requires that the plaintiff be a Florida resident or a Florida company.")   Second, even if *Internet Solutions* did apply, the Complaint still does not satisfy it because it contains nothing but conclusory "information and belief" allegations that Mr. Easterling's post was ever accessed in Florida. That is insufficient to satisfy the requirements of the long arm statute.   *See Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1368 (S.D. Fla. 2019) (declining to exercise jurisdiction over non-resident defendant for allegedly defamatory Internet post because defendant did not

allege post was accessed in Florida); *Catalyst Pharms., Inc. v. Fullerton*, No. 16-25365, 2017 WL 6558397, at *6 (S.D. Fla. Aug. 8, 2017), *aff'd* 748 F. App'x 944, 947 (11th Cir. 2018) (noting allegations that defamatory statements were accessed in Florida was insufficient as a "mere legal conclusion").

Were that not enough, the Eleventh Circuit has recognized that "[f]or personal jurisdiction to attach under the 'tortious activity' provision of the Florida long-arm statute, the plaintiff must demonstrate that the non-resident defendant 'committed a substantial aspect of the alleged tort in Florida' by establishing that the activities in Florida 'w[ere] essential to the success of the tort.'" *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 857 (11th Cir. 1990) (citing *Williams Electric Co. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir. 1988) (per curiam).

Here, no substantial aspect of the alleged torts was committed in Florida.  Indeed, the only alleged contact between Mr. Easterling's posts and Florida is Plaintiff's allegation "upon information and belief" that "members of the public in the state of Florida" viewed the posts, at some unidentified time. Plaintiff does not even aver concretely that anyone specific in the state of Florida viewed the post, resulting in harm to him. Even accepting Plaintiff's broad allegation as true, no substantial aspect of the alleged tort was committed in Florida and any Florida activity was not "essential to the success" of the tort.

Thus, the exercise of personal jurisdiction is not appropriate under Florida's long arm statute.

**B.     Due Process Prohibits Florida Jurisdiction Over Mr. Easterling**

In addition to failure to satisfy the long-arm statute, Plaintiff cannot establish that the exercise of personal jurisdiction over Mr. Easterling would satisfy due process.  To determine whether exercising specific personal jurisdiction comports with due process, the Eleventh Circuit employs a three-part test, which examines: (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum [("Relatedness Prong")]; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws [("Purposeful Availment Prong")]; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice [("Fair Play Prong")]. *Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, 305 F. Supp. 3d 1342, 1349 (M.D. Fla. 2018) (citing *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id*.

### 1.  Plaintiff's Claims Do Not Arise Out of or Relate to Activities in Florida

The Eleventh Circuit has "not developed or adopted a specific approach to determining relatedness; instead, [it has] heeded the Supreme Court's warning against using mechanical or quantitative tests." *Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tennessee, Inc.*, 102 F. Supp. 3d 1264, 1272–73 (M.D. Fla. 2015) (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1219, 1222 (11th Cir. 2009). "Necessarily, the contact must be a 'but-for' cause of the tort, yet the causal nexus between the tortious conduct and the purposeful

contact must be such that the out-of-state resident will have 'fair warning that a particular activity will subject [it] to the jurisdiction of a foreign sovereign.' " *Id*. at 1222–23 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Here, all of the allegedly tortious activity complained of by Plaintiff occurred in Louisiana. Plaintiff alleges that Mr. Easterling made defamatory posts in Louisiana, picked up by media in Louisiana, which caused Plaintiff to lose his job in Louisiana. Under the facts as alleged by Plaintiff, no causal nexus between Mr. Easterling's conduct and any contacts with Florida exists. Even crediting the conclusory assertion that Mr. Easterling's posts have been viewed by "members of the public" in Florida, Mr. Easterling could not have foreseen that such posts would subject him to suit in Florida's courts.

The United States Supreme Court has emphasized that "the foreseeability that is critical to due process analysis" is "that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Dynetech Corp. v. Leonard Fitness, Inc.*, 523 F. Supp. 2d 1344, 1347 (M.D. Fla. 2007) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "[T]he minimum contacts must be 'purposeful' contacts. The requirement for purposeful minimum contacts helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." *Id*. (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1565 (Fed.Cir.1994)).  That is exactly why "simply posting information" about a party "on a website that is visible throughout the world, and not directed at or used to contact a particular forum,

does not create minimum contacts with a forum." *Bioheart, Inc. v. Peschong*, 2013 WL 1729278, at *4 (S.D. Fla. Apr. 22, 2013).  And that is exactly what happened here.

Mr. Easterling was engaged in the hyperlocal activity of commenting on a political controversy in his community, about people in his community. He could not have reasonably expected to be haled into court 500 miles away, in a state he had until then visited only four times in his life. To find that Defendant's activity "arise out of or relate to" actions in Florida actions in this matter would mean that an individual who posts matter on the Internet is subject to a court's personal jurisdiction anywhere a plaintiff subsequently decides to move. That holding would render the "relatedness prong" of the Court's analysis completely meaningless. Consequently, this Court's exercise of personal jurisdiction over Mr. Easterling would not comport with due process.

### 2.   Mr. Easterling Did Not Avail Himself of Florida's Privileges

The second prong of the Eleventh Circuit's three-part test requires that "there . . . exist 'some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws.'" *Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tennessee, Inc.*, 102 F. Supp. 3d 1264, 1272–73 (M.D. Fla. 2015) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id*. (citing *Burger King*, 471 U.S. at 475 (1985)).

Where the underlying claims involve intentional torts, purposeful availment can be determined through application of the "effects test," which was developed in *Calder v. Jones*, 465 U.S. 783 (1984). *Id.* (citing *Louis Vuitton*, 736 F.3d at 1356–57). To satisfy the effects test, the tort must have: "(1) [been] intentional; (2) [been] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir .2008)). Here, for the reasons explained above, Mr. Easterling did not aim any of the relevant posts at Florida.  Nor could he have anticipated that any of the alleged harms would be suffered in Florida, as everyone involved in the matter was located in Louisiana. Consequently, he did not avail himself of the privilege of conducting activities within this forum.

### 3.   The Exercise of Jurisdiction Would Not Be Constitutionally Reasonable

For largely the same reasons cited in the foregoing sections, *see* § I(B)1-2, *supra*, and below, *see* § I(C), *infra*, the exercise of personal jurisdiction by this Court would not comport with traditional notions of fair play and substantial justice. Mr. Easterling did not direct any of the allegedly tortious activity at issue in this case at, into, or toward Florida, and he could not have anticipated being haled into court in this state. The exercise of personal jurisdiction in this forum would violate due process and would therefore not be constitutionally reasonable. [2]

---

[2] The Complaint does not suggest that there is any basis on which to exercise general personal jurisdiction over Mr. Easterling, because there is none.  As set forth in his Declaration, attached hereto as Exhibit 1, Mr. Easterling's contacts with Florida are neither continuous nor substantial.  Mr. Easterling does not maintain offices or agents in Florida. He does not own property in Florida. None of the Internet posts at issue in this case referred to anyone in Florida. Mr. Easterling has had no contact with Plaintiff in Florida.  In short, the sum total of Mr. Easterling's contact with Florida consists of four short visits in the course of his lifetime.  *See generally* Easterling Decl., attached hereto as Ex. 1.   General jurisdiction arises from continuous and substantial contacts with the forum state that are of such a nature "as to justify suit against [the party] on causes of action arising from dealings entirely

## II.      This Complaint Should Be Dismissed for Improper Venue Under Rule 12(b)(3)

On a Rule 12(b)(3) motion to dismiss for improper venue, the plaintiff bears the burden of showing that venue in its chosen forum is proper. *HME Providers, Inc. v. Heinrich*, WL 653920, at *1 (M.D. Fla. Feb. 18, 2010) (citing *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1269 (S.D. Fla. 2004)). To the extent that the facts alleged in the complaint are uncontroverted by affidavits from the defendant, they are accepted as true for purposes of resolving the venue issue. *Id*.

Plaintiff's Complaint alleges venue is proper pursuant to 28 U.S.C. § 1391(b)(3), Doc. 1 at ¶ 2. The statute provides that a civil action may be brought in any judicial district in which the defendant is subject to personal jurisdiction "if there is no district in which an action may otherwise be brought[.]" 28 U.S.C. § 1391(b)(3). Defendant is not subject to personal jurisdiction in this District. Moreover, as Plaintiff's allegations make obvious, this action could have been brought in the venue where the allegedly tortious activity occurred, which is where Mr. Easterling resides: the Eastern District of Louisiana in New Orleans.

Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." To determine whether a substantial part of the events giving rise to the claim occurred in a particular district, a court considers "only those acts and omissions that have a close nexus to the wrong." *Frees v. United Airlines, Inc.*, 2009 WL 10670572, at *3 (M.D. Fla. May 15, 2009) (citing *Jenkins Brick*

---

distinct" from the party's substantial contacts with the forum. *Naseer v. Mirabella Found.*, 2009 WL 10706231, at *2 (M.D. Fla. Oct. 5, 2009) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952)); Fla. Stat. Ann. § 48.193(b)(2).

*Co. v. Bremer*, 321 F. 3d 1366, 1372 (11th Cir. 2003)). Here, all the acts alleged by Plaintiff that have a close nexus to the alleged defamation involve events that occurred in New Orleans. The protest Plaintiff attended was in New Orleans. Mr. Easterling lives in New Orleans. The decision to post the videos and articles that are the subject of this lawsuit was made in New Orleans. At the time of the events in question, Plaintiff lived and worked in New Orleans. The decision to fire Plaintiff from his prior place of employment was made in New Orleans. In short, every single fact relevant to the allegations in the Complaint occurred in New Orleans, and the single, tenuous connection to this district is that Plaintiff moved here sometime after the events in question occurred. In such circumstances, it is clear beyond cavil that this case can and should be in New Orleans. Indeed, venue is proper pursuant to 28 U.S.C. § 1391(b)(3) only if a plaintiff is subject to personal jurisdiction in the district (Mr. Easterling is not, as briefed *supra*) and if there is no other venue in which the action could be brought; here there is. Because venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(2), this case should be dismissed. *See Frees*, 2009 WL 10670572, at *4 (dismissing action after finding appropriate venue elsewhere).

### III.     Plaintiff Fails to State A Claim Upon Which Relief Can Be Granted

Even if this Complaint were not barred by lack of personal jurisdiction and improper venue, it should nevertheless be dismissed under Rule 12(b)(6) for several reasons. First, this Court should apply Louisiana law to Plaintiff's claims, under which all the alleged torts are time-barred. Second, Plaintiff's defamation claims are constitutionally protected opinion, and, in any

event, are based on speech that is not defamatory. Finally, Plaintiffs' other tort claims are barred by Florida's single-action rule.

In considering a Rule 12(b)(6) motion, a court takes all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, as ask[s] whether the pleadings contain "enough facts to state a clam to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). However, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and a court is not bound to accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678.

### A.   Plaintiff's Claims Are Time-Barred Under Louisiana Law

Plaintiff filed this Complaint on May 15, 2019, alleging defamation and other torts occurring in May, 2017.  Under Louisiana's statute of limitations, or "prescriptive period," all claims arising from that publication are time barred. La. Civ. Code Ann. art. 3492.

A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state. *Klaxon v. Stentor Elec. Mfg,. Co.*, 313 U.S. 487 (1941). Accordingly, if this Court exercises jurisdiction and finds sufficient contacts with the forum state, it must apply Florida's choice-of-law rules. *See Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 225 (S.D. Fla. 2002); *see also Klaxon Co.*, 313 U.S. at 496. The Court must first characterize the claims at issue to determine if they concern contract, tort or property issues. *Acme Circus Operating Co., Inc. v. Kuperstock,* 711 F.2d 1583, 1540 (11th Cir. 1983). When the claims at issue are torts, the court

must apply Florida's "most significant relationships test." *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc., 485 F.3d 1233, 1240 (11th Cir. 2007) (citing Bishop v. Florida Specialty Paint Co., 389 So.2d 999, 1001 (Fla. 1980))*. This test requires consideration of four factors: (1) the place where the alleged injury occurred, (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Neiman Nix v. ESPN, Inc., 2019,* 772 F. App'x 807, 809 (11th Cir. 2019) (unreported); (citing Restatement (Second) of Conflict of Laws § 145 (1971)).

Because the applicable statute of limitations is one year in Louisiana and two years in Florida, a conflict of law exists in this case. *Compare* La. Civ. Code Ann. art. 3492 and Fla Stat 95.11(4)(g). The "significant relationships test" yields the inescapable conclusion that Louisiana law applies in this case, for all of the reasons detailed above, including that the alleged injury occurred in Louisiana and the conduct allegedly causing the injury occurred in Louisiana. Although Plaintiff now resides in Florida, he lived in Louisiana at the time of the events at issue in this case; Mr. Easterling also resided in Louisiana at the time of the events at issue in this case, and he continues to reside there. Any "relationship" between Plaintiff and Mr. Easterling arose in Louisiana, not Florida. Accordingly, this Court should apply Louisiana law. Because Louisiana law applies, all of Plaintiff's claims are time-barred and must therefore be dismissed.

### B.    Plaintiff Fails to State a Viable Defamation Claim

Florida courts have long recognized that the prompt dismissal of meritless defamation claims serves First Amendment values by protecting the robust discussion of public affairs from the burden and expense of litigation. *See, e.g., Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 363

(Fla. 4th DCA 1997) ("Where the facts are not in dispute in defamation cases . . . pretrial dispositions are 'especially appropriate' because of the chilling effect these cases have on freedom of speech.") (quoting *Karp v. Miami Herald Publ'g Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978)); *see also Southard v. Forbes, Inc.*, 588 F.2d 140, 145 (5th Cir. 1979) (the "very pendency of a [defamation] lawsuit may exert [a] chilling effect" on speech). This preference for summary disposition, in addition to serving important Constitutional values, also reflects the fact that the contents of challenged publications in defamation cases against media defendants are typically both undisputed and before the court at the pleadings stage and can therefore properly be evaluated on a preliminary dispositive motion "firsthand and in context." Hon. Robert D. Sack, Sack on Defamation § 16.2.1 (4th ed. 2013) (noting that "courts routinely consider, on motions to dismiss . . . issues such as whether the statement at bar is capable of bearing a defamatory meaning," and they "frequently grant motions on these grounds and others"); *see, e.g., Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984) (affirming dismissal where the allegedly defamatory statements, when construed in context and in light of "[a]ll of the circumstances surrounding the publication," were not actionable).

Plaintiff's first three causes of action are for defamation; he alleges "common law defamation 'per se,'" "common law general defamation," and "common law defamation by implication." Doc. 1 at ¶¶ 82-106. All three are based on the same allegedly defamatory speech—specifically, Mr. Easterling's alleged comment that Plaintiff was wearing rings "depict[ing] a 'Nazi SS skull' and a 'German Iron Cross' and that the rings are 'both symbols of the Nazi regime.'" Doc. 1 ¶ 22.

It is well-settled under Florida law that "[S]tatements of pure opinion are protected from defamation actions by the First Amendment." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Keller v. Miami Herald Pub. Co.*, 778 F.2d 711, 714 (11th Cir. 1985) and affirming Rule 12(b)(6) dismissal); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002); *Hallmark Builders, Inc. v. Gaylord Broad. Corp.*, 733 F.2d 1461, 1464 (11th Cir. 1984); *Stembridge v. Mintz*, 652 So. 2d 444 (Fla. 3d DCA 1995) (citation omitted). This principle is based on the First Amendment's command that "there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974). "However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries, but on the competition of other ideas." *Id*.

A statement is considered a "pure opinion" when "the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." *Id.*; *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 (S.D. Fla. 2006). "Whether the statement is one of fact or opinion" is a question of law for the court. *Turner*, 879 F.3d at 1262-63. In making that determination, "the court must construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication." *Keller*, 778 F.2d at 717; *Morse v. Ripken*, 707 So. 2d 921, 922 (Fla. 4th DCA 1998). Further, the court "must consider the context in which the statement was published." *Rasmussen v. Collier Cty. Publ'g Co.*, 946 So. 2d 567, 571 (Fla. 2d DCA 2006). Indeed, courts widely agree that "even a provably false statement is not actionable if it is plain that the speaker is expressing a subjective view, an interpretation, a

theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts." *Riley v. Harr*, 292 F.3d 282, 289 (1st Cir. 2002) (internal marks omitted); *Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997); *Moldea v. New York Times Co.*, 22 F.3d 310, 317 (D.C. Cir. 1994); *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993). Courts also have not hesitated to apply the constitutional protections for opinion at the motion to dismiss stage. *E.g., Turner v. Wells*, 198 F. Supp. 3d 1355, 1358 (S.D. Fla. 2016); *Del Fuoco v. O'Neill*, 2011 WL 601645, at *7-8 (M.D. Fla. Feb. 11, 2011).

Here, there is no serious question that the allegedly defamatory statements were pure opinion. The fact that Plaintiff was wearing rings is undisputed in the Complaint. Doc. 1 at ¶¶ 22, 70, 73, 74, 76, 102, 105. And while Plaintiff asserts that his rings were a "Mexican sugar skull" and an "Iron Cross or Maltese crown" that "is not, in the form worn by Dean, a symbol of the Nazi regime," Doc. 1 at ¶ 22, the rings' resemblance to Nazi symbols is at best a matter of opinion. More importantly, the facts upon which Mr. Easterling's conclusion regarding the rings is based are manifestly set forth in the publication itself—that is, Mr. Easterling is commenting on a video of Plaintiff *wearing the very rings in question*. That is the basis upon which Mr. Easterling concluded that the rings were Nazi symbols, and any reader or review is equally capable of coming to their own conclusion. That is as pure as opinion gets.

To the extent the Complaint claims that Plaintiff was defamed by other parts of Mr. Easterling's post, it is incorrect. For example, Plaintiff's participation in the "Battle of New Orleans," as the protests were called, is entirely factual and therefore not false, as is required for a defamation claim. *See Warner v. Schmidt*, 2011 WL 2784492, at *1 (M.D. Fla. July 15, 2011)

(reciting elements of defamation).  And to the extent Plaintiff claims that Mr. Easterling's post is defamatory insofar as it "inferring that Dean participated in a public altercation," it relies upon a deliberate misreading of the post itself.  The "battle" at issue referred to an intense public debate about Confederate monuments, not a physical altercation, and that language was employed by participants in the event.[3] Plaintiff offers no allegations to the contrary.

Similarly, Plaintiff's allegation that Mr. Easterling defamed him by writing that Plaintiff was "aligned" with hate groups intentionally misconstrues what Mr. Easterling actually wrote. The post at issue stated Plaintiff was "in attendance during" the May 7, 2017 *event* that was "aligned with known white nationalist organizations, such as the Ku Klux Klan, League of the South and the Based StickMan Movement." As written, the final clause refers to the "Battle of New Orleans" event itself—*i.e.*, that the event was "aligned with" the identified groups, not Plaintiff. Regardless, whether Plaintiff was "aligned with" those groups is a matter of protected opinion. In contrast to an allegation that Plaintiff is a member of a certain organization, a statement that he is "aligned with" certain organizations is neither verifiable nor demonstrably false. It indicates the speaker's belief that Plaintiff has displayed or communicated values in accord with, or similar to, those of the organizations.

### C.    Florida's Single Action Rule Bars Plaintiff's Other Tort Claims

---

[3] *See* Avi Selk, *'The Battle of New Orleans': David Duke expects Confederate statute defenders to mass on Sunday*, THE WASHINGTON POST, May 6, 2017, available at: https://www.washingtonpost.com/news/post-nation/wp/2017/05/06/the-battle-of-new-orleans-david-duke-expects-confederate-statute-defenders-to-mass-on-sunday/ (last visited Sept. 13, 2019) ("The Battle of New Orleans," they call it—the statutes' defenders and detractors alike.")

In addition to three counts of defamation, Plaintiff asserts three additional, different tort claims that are barred under Florida's single publication/single action rule.  The rule "precludes the recasting of defamation claims as additional, distinct causes of action in tort if all of the claims arise" from the same allegedly defamatory publication. *Int'l Sec. Mgmt. Grp., Inc. v. Rolland*, 271 So. 3d 33, 48 (Fla. Dist. Ct. App. 2018), reh'g denied (Feb. 28, 2019) (citing *Fridovich v. Fridovich*, 598 So.2d 65, 69 (Fla. 1992) ("It is clear that a plaintiff is not permitted to make an end-run around a successfully invoked defamation privilege by simply renaming the cause of action and repleading the same facts."); *Ovadia v. Bloom*, 756 So.2d 137, 141 (Fla. 3d DCA 2000) (explaining that multiple actions are not permitted under the single publication/single action rule when they arise from the same publication upon which a failed defamation claim is based); *Edelman v. Kolker*, 194 So.2d 683, 684 (Fla. 3d DCA 1967) ("The general rule in Florida is that only one cause of action arises out of a single tort committed on an individual, even though that tort results in damages to both the person and his physical property.").

Florida's single-action rule is rooted in the well-established legal principle that "a single wrongful act gives rise to a single cause of action, and that the various injuries resulting from it are merely items of damage arising from the same wrong." *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 609 (Fla. 4th DCA 1975) (quoting *Easton v. Wier*, 167 So. 2d 245, 247 (Fla. 2d DCA 1964)) (dismissing intentional interference claim). It bars additional tort claims arising from an allegedly defamatory publication even when the underlying defamation claim is itself meritless. *See Kinsman v. Winston*, 2015 WL 12839267, at *5 (M.D. Fla. Sept. 15,

2015) ("Non-defamation tort claims based on a defamatory statement are barred regardless of whether the defamation claim fails."); *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1257 (S.D. Fla. 2014) ("When claims are based on analogous underlying facts and the causes of action are intended to compensate for the same alleged harm, a plaintiff may not proceed on multiple counts for what is essentially the same defamatory publication or event.").

Here, because all of Plaintiff's claims arise from the same allegedly defamatory publication, he cannot restyle his defamation claim as additional torts. Consequently, this Court should dismiss Plaintiff's intentional infliction of emotional distress (Fourth Cause of Action, Doc. 1 at ¶¶ 115-118), tortious interference (Fifth Cause of Action, Doc. 1 at ¶¶ 119-124), and assault claims (Sixth Cause of Action, Doc. 1 at ¶¶ 125-130), regardless of whether his defamation claim has merit.

Separate and apart from the single-action rule, the Constitution itself bars Plaintiff's non-defamation tort claims. Indeed, the Supreme Court has directed that the First Amendment-based safeguards that limit the reach of the defamation tort govern all claims seeking to recover damages for reputational injury, regardless of how those claims are styled. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 51-57 (1988). Put another way, "a plaintiff may not avoid the protection afforded by the Constitution . . . merely by the use of creative pleading." *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union, Local 655*, 39 F.3d 191, 196 (8th Cir. 1994) (holding that constitutional standards governing defamation claims "must equally be met for a tortious interference claim based on the same conduct or statements"); *see also Farah v. Esquire Magazine*, 736 F.3d 528, 540 (D.C. Cir. 2013) (First Amendment precludes claims for

false light and tortious interference based on defendants' non-defamatory speech); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 522 (4th Cir. 1999) (plaintiff could not "recover defamation-type damages under non-reputational tort claims, without satisfying the stricter (First Amendment) standards of a defamation claim" because "such an end-run around First Amendment strictures is foreclosed by Hustler").  Here, where it is obvious that Plaintiff's other tort claims are based on the same protected speech as his defamation claims, those additional claims must fall alongside the defamation claims.

### D.  Plaintiff Fails to Adequately State an IIED Claim

Separate and apart from all of the issues explained above, Plaintiff has simply failed to adequately allege a claim for intentional infliction of emotional distress.  Doc. 1 at ¶¶ 115-118. The essential elements of a claim for intentional infliction of emotional distress are: 1) extreme and outrageous conduct; 2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; 3) severe emotional distress suffered by the plaintiff; and 4) proof that the conduct caused the severe emotional distress. *R.W. v. Armor Corr. Health Servs., Inc.,* 830 F. Supp. 2d 1295, 1304 (M.D. Fla. 2011) (citing *Gonzalez–Jimenez de Ruiz v. U.S.,* 231 F.Supp.2d 1187, 1199 (M.D.Fla.2002)).  Florida Courts have upheld a cause of action for intentional infliction of emotional distress only in "extremely rare circumstances." *Id.* (citing *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278 (Fla.1985)). In cases where the cause of action has been upheld. the alleged behavior has been deemed "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" *Id.* (citation omitted).

Here, Plaintiff offers nothing more than self-serving, conclusory statements to support his claim that Mr. Easterling intended to cause severe emotional distress. More importantly, the conduct at issue here cannot be considered so outrageous or extreme as to go beyond all bounds of decency. Mr. Easterling was merely engaged in commenting on a political controversy in his community. Consequently, this claim must be dismissed.

### E.    Plaintiff Fails to Adequately State a Tortious Interference Claim

Plaintiff's fifth cause of action is "common law tortious interference with prospective advantage." Doc. 1 at ¶¶ 119-124.  To sufficiently state such a claim, a plaintiff must establish five elements: (1) the existence of a business relationship; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff caused by the interference. *Id*. (citing *Magre v. Charles*, 729 So.2d 440, 444 (Fla. 5th DCA 1999). *Florida Fern Growers Ass'n v. Concerned Citizens of Putnam County*, 616 So.2d 562 (Fla. 5th DCA 1993); *see also Silverman v. Wells Fargo Ins. Servs. USA, Inc.*, 20 F. Supp. 3d 1357, 1362 (S.D. Fla. 2014) (citation omitted).

Plaintiff's tortious interference claim is premised on the allegation that Mr. Easterling's Internet posts "were of direct cause to Dean's eventual termination from employment at Crescent Leadership Academy." Doc. 1 at ¶ 27. He also blames the posts for "damage to his professional reputation as an educator and education administrator [and] loss of professional opportunities in the field of education[.]" Doc. 1 at ¶ 12.  This claim is unavailing for at least two reasons.

First, Plaintiff has not alleged, and cannot prove, that Mr. Easterling's posts were the proximate cause of his termination.  Indeed, a follow-up article on nola.com that Plaintiff has

attached to the complaint expressly notes that his employer performed a thorough investigation prior to terminating him.  *See* Doc. 1-10 (Exhibit 6 to the Complaint).  The fact that there was an investigation itself belies any claim that Mr. Easterling's posts were the proximate cause of Plaintiff's termination.

Even without the investigation, it is self-evident that other factors, including but not limited to the extensive media attention the incident received, Plaintiff's appearance on a right-wing radio show in which he admitted that some people might see him as a racist (*see* Doc. 1-8), or the widely circulated image of him standing next to a confederate flag (*id*.), could have been the proximate cause of his dismissal.  Plaintiff acknowledges that he appeared in public during the confederate monument removal wearing a helmet and carrying a wooden shield. Doc. 1 at ¶ 62. He also admittedly wore two rings depicting, in his characterization, a skull and an "Iron Cross or Maltese crown." Doc. 1 at ¶ 22. In the news coverage cited by Plaintiff, Southern Poverty Law Center researcher Alex Amend states that Plaintiff wore gear to Lee Circle that is "very popular among 'alt-right' street activists" (citing his "300-esque 'Sparta' shield, Metallica lettered shirt, helmet and goggles).[4] Additionally, the article notes that the rings worn by Plaintiff "appear similar in design to those used as symbols of white nationalism."[5]  Plaintiff's unsupported assertion that Mr. Easterling's posts caused his firing are not enough to meet the applicable pleading standards.  "Factual allegations that are merely consistent with a defendant's

---

[4] Danielle Dreilinger, *New Orleans principal loses job after wearing Nazi-associated rings in video*, NOLA.COM/THE TIMES-PICAYUNE, May 25, 2017, available at: https://www.nola.com/news/education/article_1ed3b635-cc0a-5593-9925-d89eeff8aa71.html (last visited September 6, 2019).
[5] *Id.*

liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337

(11th Cir. 2012).

Second, even if Plaintiff could plausibly allege causation, his tortious interference claim

also fails because the Complaint does not allege that Mr. Easterling's recording and posting of

the video was unjustified.  It is well-settled Florida law that a journalist's activities in gathering

and publishing information about a matter of public concern cannot form the basis for a tortious

interference claim, because such activities are by their nature justified.  *See, e.g.*, *Seminole Tribe*

*v. Times Publ'g Co.*, 780 So. 2d 310, 318 (Fla. 4th DCA 2001).

Consequently, Plaintiff's claim of tortious interference with a prospective advantage must

be dismissed.

### F.      Plaintiff Fails to Adequately State an Assault Claim

Plaintiff's sixth cause of action is "common law assault (apprehension)." Doc. 1 at ¶¶

125-130. As defined in Florida law, the elements of assault include an intentional threat by an

act, coupled with an apparent ability to carry out the threat, that creates a fear of imminent

violence; the required intent is to do the act, not the intent to do violence to the victim. *Geovera*

*Specialty Ins. Co. v. Hutchins*, 831 F. Supp. 2d 1306, 1312 (M.D. Fla. 2011), *aff'd*, 504 F. App'x

851 (11th Cir. 2013) (citation omitted). Here, Plaintiff does not allege that Mr. Easterling

threatened him. Instead, he alleges that Mr. Easterling published statements that put his life at

risk "by revealing and disclosing him to Antifa[.]" Doc. 1 at ¶ 126. That organization, he alleges,

has "openly pledged to terrorize and inflict bodily harm ('punch') persons identified as 'Nazis.'"

Doc. 1 at ¶ 127. Thus, Plaintiff has not alleged that Mr. Easterling made any threat, intentional or

otherwise, directed at or toward him. Neither has Plaintiff alleged that Mr. Easterling has the ability to carry out any such threat.

Plaintiff has not even pleaded that Antifa threatened him personally or that it had the ability to carry out the threat. He alleges that Antifa has pledged to punch Nazis—not Plaintiff himself—and Plaintiff asserts that he is not a Nazi. Here, Plaintiff has not adequately pleaded as assault claim against Antifa, much less Mr. Easterling.[6] Moreover, Plaintiff has neither alleged any connection between Mr. Easterling and Antifa, nor any request or statement by Mr. Easterling to Antifa to take any actions against Plaintiff. Rather, he claims that Mr. Easterling's allegedly defamatory statements "subjected [him] to an open call that any and all militant Antifa should kill or do bodily harm to Dean." Doc. 1 at ¶ 128.

In this extremely attenuated chain of causality, as alleged by Plaintiff, Mr. Easterling could not be held liable. Consequently, this claim must be dismissed.

## CONCLUSION

For all the foregoing reasons, the Court should enter an order dismissing Plaintiff's claims against Mr. Easterling in their entirety. Defendant further reserves his right to file a motion for attorneys' fees and costs pursuant to Florida's anti-SLAPP statute, Fla. Stat. Ann. § 768.295.

Respectfully submitted,

*/s/ Katie Schwartzmann*
Katie Schwartzmann, Louisiana Bar Roll No. 30295
*Application for Admission Pro Hac Vice Pending*
*The American Civil Liberties Union-F of Louisiana*

---

[6] Notably, Plaintiff claims that, before the alleged defamation, he was "concerned about the actions of violent Antifa protesters attacking citizens" at a protest, which he voluntarily attended and "offered protection to the nonviolent persons assembled." Doc. 1 at ¶ 62. Plaintiff's own admission that he chose to confront this allegedly violent organization before the alleged defamation belies his allegation that he is now in fear of imminent violence from it.

P.O. Box 56157
New Orleans, La 70156
Telephone: (504) 522-0628 x 125
Email: kschwartzmann@laaclu.org

-and-

**THE BONDERUD LAW FIRM, P.A.**

*/s/ Andrew Bonderud*
Andrew M. Bonderud, Esq.
Florida Bar No. 102178
301 W. Bay Street, #1433
Jacksonville, FL 32202
(904) 438-8082 (Office)
(904) 800-1482 (Facsimile)
BonderudLaw@gmail.com
Andrew@Jax.Lawyer
*Attorneys for the Defendant Easterling*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date, I filed the foregoing document with the Clerk of Court

via the CM/ECF system, which will send a notice of electronic filing via email to:

Augustus Invictus, Esq.
Florida Bar No. 98586
The Law Office of Augustus Invictus, Esq.
44489 Town Center Way, Suite D478
Palm Desert, CA 92260
InvictusPA@protonmail.com
*Counsel for Plaintiff*

Charles D. Tobin, Esq.
Ballard Spahr LLP
1919 K St. NW, 12th Floor
Washington, DC 20006
TobinC@ballardspahr.com
*Counsel for Defendant Advance Local Media, LLC*

*/s/ Andrew Bonderud*
Attorney