**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| NICHOLAS DEAN | ) | Civil Action No. 3:19-cv-566 |
| | ) | |
| Plaintiff, | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES EASTERLING | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ADVANCE LOCAL MEDIA, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff Nicholas Dean, through undersigned Counsel, hereby respectfully submits this Response in Opposition to the Motions to Dismiss of Defendants Charles Easterling ("Easterling") and Advance Local Media, LLC ("Advance Local Media" or "ALM").

**INTRODUCTION**

In May 2017, Plaintiff was Principal of Crescent Leadership Academy in New Orleans, Louisiana. Having attended a rally in protest of the removal of several Confederate monuments in New Orleans, he drew the ire of left-wing radicals.

One of those offended radicals was Defendant Easterling, who published false statements to his social media accounts, namely Facebook and YouTube, under the pseudonym Abdul Aziz, to wit:

> Nicholas Dean, Principal of Crescent Leadership Academy was in attendance during the May 7, 2017 "Battle of New Orleans" aligned with known white nationalist organizations, such as the Ku Klux Klan, League of the South and the Based Stick Man movement. :22 Seconds into the video, he can clearly be seen

wearing two rings, one depicting the Nazi SS Skull and the other the German Iron Cross, both symbols of the Nazi regime.

In fact, Plaintiff is a patriotic Southerner and was not aligned with the Ku Klux Klan, the League of the South, or the Based Stick Man movement; Plaintiff happened to be wearing a Mexican sugar skull ring, not a "Nazi SS skull"; and the German Iron Cross is not a symbol specific to the "Nazi regime."

The defamatory claims of Defendant Easterling were picked up by the Times-Picayune and Nola.com and were then disseminated to countless other news outlets, including the Southern Poverty Law Center, Huffington Post, The Root, Daily Mail, Atlanta Black Star, The New Orleans Advocate, Yahoo Canada, The Washington Times, The Washington Post, NY Daily News, NPR, and Politico.com. The story was a nationwide scandal and sparked hit pieces in myriad lesser publications, as well, including Affinity Magazine.us, Atlanta Blackstar, Sputnik News, Hackeducation.com, Kappanonline.com, American University Radio, Hollywood Unlocked, Raw Story, Tri-State Defender, Bossip.com, Trofire.com, Blacksports online, Nowwhatmedia.com, Pilotonline.com, Iheart.com, Spreaker.com, Luminarypodcasts.com, Lipstickalley.com, Americaspeaksink, The Young Turks, HBCUsports, Gerrycanavan.com, Pressherald.com, Pintrest.com, Nielix.com, Scholasticadministrator.com, Goodnewseverybody.com, Longroom.com, Thecoli.com, Eblnews.com, Uvideoplay.com, and Gamebreakingnews.net. Being an internet phenomenon, these defamatory claims were published in Florida and accessed in Florida, and are still accessible and accessed in Florida to this day.

Defendant ALM as Nola.com went above and beyond the mere reporting of news and ran an Opinion piece stating that the Plaintiff, a white principal at a predominantly black school, should not be allowed around children of any race or ethnicity:

> That's not to say that Nicholas Dean, the now former principal of Crescent Leadership Academy, should be in charge of a predominantly white student body.  If he's going to dress up like a Nazi and talk Nazi talk, then he should be kept as far away from all children, regardless of their race or ethnicity.

Jarvis DeBarry, Principal in Nazi gear is gone, just like the monuments he supported: Opinion, NOLA.COM (May 26, 2017).

Plaintiff contacted the ACLU of Louisiana to ask for their help in this matter. He informed the ACLU that the statements made about him were false and defamatory, and he asked them to take his case. The ACLU declined to help Plaintiff. Instead, two years later, the ACLU took the case of the man who had made the statements about Plaintiff with the specific intent of having him terminated from his employment and blacklisted from the educational profession: Defendant Easterling.

Terminated from his employment, blacklisted from the educational profession, and run out of town by vicious, defamatory attacks by Defendants, Plaintiff took up residence in the Middle District of Florida in July 2017, roughly two months after the original defamatory publications.

Defendants fully intended their statements and articles to result in the termination of Plaintiff and to blacklist Plaintiff from the educational profession nationwide. Defendants intended their publications to be accessible in Florida and to be accessed by people in Florida, as well as every other State in the United States and internationally. Moreover, these publications actually are accessible in Florida and have been accessed in Florida. Most pressing of all, the entire reason Plaintiff is in Florida to begin with is the defamation by the Defendants, the viciousness and falsity of which drove him out of Louisiana. Defendants are therefore subject to general and specific jurisdiction in Florida, and Florida's statutes of limitations on each Cause of Action apply.

Just as Plaintiff's claims are not time-barred, neither are they barred by the single-action rule, which is a rule concerning *res judicata*, not a rule to prevent Floridian plaintiffs from raising multiple causes of action in a single Complaint. Defendants' statements were false, defamatory, and not contemplated by the First Amendment. They were intended to break Plaintiff's contract as a school principal and to blacklist him from any other contract in the United States and beyond. They were intended to inflict emotional distress in the Plaintiff, and they were intended to mark Plaintiff for physical reprisal by violent leftists. Plaintiff has made allegations proper and sufficient for each Cause of Action, and the Court should vacate Defendants Motions to Dismiss and set a discovery schedule for the present case.

## STANDARD OF REVIEW

In ruling on a motion to dismiss for failure to state a claim, the Court "must accept the allegations set forth in the complaint as true." *Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002); see also *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See *Omar ex. rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Dismissal would be particularly inappropriate here because a motion to dismiss "is not a procedure for resolving a contest about . . . the merits of the case." 5A Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1356 at 294 (2nd Ed. 1990).

The accepted rule is "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957). Moreover, a complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies on since the

court must determine whether the allegations provide for relief on any possible theory. See

Robertson v. Johnston, 376 F.2d 43 (5th Cir. 1967).

What a plaintiff must do in his complaint is to set forth sufficient facts and information to

outline his claim or to permit the appropriate inferences that may be drawn from the claim. The

pleadings must show, in short, that Plaintiff has no claim before the 12(b)(6) motion may be

granted. "Thus, the movant sustains a very high burden." *Jackam v. Hospital Corp. of America*

*Mideast, LTD*, 800 F.2d at 1579.

## ARGUMENT

I.   **This Court Has Personal Jurisdiction over Defendants Easterling and Advance Local Media, LLC**

    A.   **General Personal Jurisdiction**

        1.   **Plaintiff's Claims Relate to Activities in Florida Because Defendants Intended the Impact of Their Conduct to Be Nationwide**

Defendants rely upon the "effects test" in moving to dismiss the present case, the

elements of which test are that the tort must have: "(1) [been] intentional; (2) [been] aimed at the

forum state; and (3) caused harm that the defendant should have anticipated would be suffered in

the forum state." Doc 13 at 10. Defendants claim that his posts were not aimed at Florida, that he

could not anticipate that harm would be suffered by Plaintiff in Florida, and that Defendants did

not avail themselves of the privilege of conducting activities in Florida.

It appears Defendants concede at least the first element of the effects test, namely that

they certainly did act intentionally. As concerns the second element, the torts of Defendants were

indeed aimed at the forum State, for the speech was online and was clearly intended to reach the

broadest audience possible. To believe that a self-proclaimed journalist and a national media

company would *not* want to reach the broadest audience possible would require a great deal of

gullibility. Their intended audience would obviously include Florida, which is, of course, part of the United States. As concerns the third element, Defendants, in intending to defame Plaintiff to as large an audience as possible, in intending to have him blacklisted from the educational profession at large, and in intending to have him assaulted by violent leftists, anticipated or should have anticipated that harm would be suffered in Florida just as they intended it in each and every State in this country. Thus, the effects test is indeed satisfied.

      **2.**      **Acknowledging the Jurisdiction of This Court over Defendants Easterling and Advance Local Media is Eminently and Constitutionally Reasonable**

Defendants claim that "Easterling did not direct any of the allegedly tortious activity at issue in this case at, into, or toward Florida." This is plainly and obviously false. Defendant Easterling fully intended his defamation to reach all across the country, which it did, to blacklist Plaintiff from the educational profession, which is exactly what happened, and to make of Plaintiff a target for violent reprisal by criminal leftists. The fact that Defendant Easterling did not anticipate "being haled into court in this [S]tate" does not mean that he did not fully intend severe damage to Plaintiff, and it does not mean that he is not properly before this Court. There is no violation of due process as concerns either Defendant.

But speaking of fair play and substantial justice, let it not be forgotten that the entire reason Plaintiff was forced to leave New Orleans and take up residence in Jacksonville was the malicious activity of Defendants; which actions form the basis of the present legal matter. If fair play and substantial justice are the standard, then it is only fair and just that this Court should have jurisdiction, as Plaintiff is the victim of Defendants' tortious actions, and not the other way around. Were it not for the tortious actions of Defendants Plaintiff would still be a school principal in New Orleans.

### B.      Specific Personal Jurisdiction

As Defendants note, Plaintiff's Complaint alleges that personal jurisdiction is appropriate under the "tortious act" provision of Florida's long-arm statute. Under that provision, a person submits to the jurisdiction of Florida's courts by "[c]ommiting a tortious act within [Florida]." Fla. Stat. § 48.193(1)(a)(2). In the online defamation context, Florida courts have interpreted this provision to extend as far as cases where an out-of-state defendant publishes allegedly defamatory material online about a Florida-based plaintiff, and that material is accessed in Florida.

This prima facie showing has been made by Plaintiff. Numerous Florida newspapers have published this paragraph, which demonstrates not only that Floridians accessed the articles, but also that Defendants' defamation was still being published in Florida:

> In June, a New Orleans principal was fired from his job after a video showed him at a protest against the removal of a statue of Confederate Gen. Robert E. Lee, according to the New Orleans Times-Picayune. He initially said he visited the protest as a student of history, but the video showed him wearing rings associated with the Nazi movement and white nationalism.[1]

Because Easterling's defamation reached Florida by way of the internet and newspapers it was published in, it is a tort under Florida jurisdiction.

It does not matter that Plaintiff was a resident of Louisiana when the tort occurred. Defendants make much of the fact that Plaintiff was in Louisiana at the time of the tortious actions of Defendants, but this is not the standard for the filing of a lawsuit.

---

[1] Cleve R. Wootson Jr., Florida school district suspends teacher caught leading a double life as a white nationalist podcaster, The Florida Times-Union Jacksonville.com, (Mar 6, 2018 at 10:17 AM), https://www.jacksonville.com/nationworld/20180306/florida-school-district-suspends-teacher-caught-leading-double-life-as-white-nationalist-podcaster; Fla. school district suspends teacher caught leading a double life as a white nationalist podcaster, The St. Augustine Record, (Mar 6, 2018 at 9:40 AM), https://www.staugustine.com/nationworld/20180306/fla-school-district-suspends-teacher-caught-leading-double-life-as-white-nationalist-podcaster; Cleve R. Wootson Jr., Florida school district suspends teacher caught leading a double life as a white nationalist podcaster, Hearld-Tribune.com, (Mar 6, 2018 at 10:15 AM), https://www.heraldtribune.com/zz/shareable/20180306/fla-school-district-suspends-teacher-caught-leading-double-life-as-white-nationalist-podcaster?template=ampart.

> The jurisdiction of a court depends upon the state of things **at the time of the action brought**. This time-of-filing rule is hornbook law taught to first-year law students in any basic course on federal civil procedure. It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing--whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal.

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004) (emphasis added). At the time Plaintiff filed the present action, he had become a bona fide resident of Florida and thus became unquestionably entitled to file a lawsuit in the Middle District, with the laws of Florida applying. He also continues to suffer injury to this day in being blacklisted from the educational profession, whether in Florida or any other State, as a direct result of Defendants' tortious actions.

### C.    Due Process

Defendants claim that "[t]he Court's exercise of specific personal jurisdiction here . . . would not comport with due process." Defendant Advance Local Media cites *Bioheart, Inc. v. Peschong*, No. 13-60304, 2013 U.S. Dist. LEXIS 57259 (S.D. Fla. Apr. 22, 2013, quoting: "[S]imply posting information" about a party "on a website that is visible throughout the world, and not directed at or used to contact a particular forum, does not create minimum contacts with a forum." *Id.* at 12. That might be all fine and well, except for the fact that Defendants fully and intentionally directed their tortious acts at the State of Florida and at each and every State in the country where Plaintiff might seek employment after being terminated from his place of employment, which, again, was fully intended by Defendants.

Defendants also cite *Alternate Energy Corp. v. Redstone*, 328 F. Supp. 2d 1379 (S.D. Fla. 2004), quoting, "the mere fact that allegedly libelous statements appeared in a publication sold to Florida residents is not sufficient to give a defendant fair warning that he may be haled into court here." *Id.* at 1383. Again, Defendants fully intended their tortious actions to be felt in Florida.

The damage suffered by Plaintiff in Florida was not mere happenstance but rather the fully intended consequence of Defendants' actions.

Defendants cite the three-pronged minimum contacts test, stating that "the Complaint fails all three prongs of the due process analysis" because "the only allegation linked to Florida is that the articles in question were posted on the Internet." Again, this is entirely inaccurate, as the articles did not merely "happen" to be posted on the Internet: they were deliberately targeted to defame Plaintiff in each and every State in the Union, to have him fired from his job, to have him blacklisted from his profession, to have him assaulted by violent leftists, and to inflict emotional distress in him. These things are not mere happenstance but were the specific intention of Defendants.

Defendants speak here again of "fair play and justice." Again, the entire reason Plaintiff was forced to leave New Orleans and take up residence in Jacksonville was the malicious activity of Defendants, which actions form the basis of the present legal matter. If fair play and substantial justice are the standard, then it is only fair and just that this Court should have jurisdiction, as Plaintiff is the victim of Defendants' tortious actions, and not the other way around. Were it not for the tortious actions of Defendants Plaintiff would still be a school principal in New Orleans.

It would be absurd to state that a man run out of town by the outrageous actions of others should be handicapped in bringing suit against the offenders from his new place of residence, which he would not be at but for the bad actions of the offenders. This would mean that an offender can do anything he wishes, so long as his deeds are dastardly enough to drive a man and his family out of town.

## II.     Venue Is Proper under Rule 12(b)(3)

Defendants seek dismissal on the grounds that venue is improper in the Middle District of Florida. This is incorrect. It is true that the protest in question was in New Orleans; that Defendant Easterling resides in New Orleans; that the decision to commit the tortious actions forming the basis of the present litigation was made in New Orleans; and that Plaintiff lived and worked in New Orleans at the time Defendants made their poor decisions.

However, none of this changes the fact that Defendants deliberately defamed Plaintiff with false information, that they intended this defamation to be nationwide, that the defamation did spread throughout all State in the nation, that Defendants fully intended to have Plaintiff blacklisted from the educational profession in every State in the country, and that Florida happens to be one of those fifty States.

Most important of all, Defendant Easterling's statement that the "single, tenuous connection to this district is that Plaintiff moved here sometime after the events in question occurred" is a gross mischaracterization of why, how, and when Plaintiff came to reside to the Middle District of Florida. But for the tortious conduct of Defendants, Plaintiff would still be a school principal in New Orleans. Plaintiff's move to Florida was a direct result – the intended result, in fact – of Defendants' tortious actions. To rely upon the devastating effects of Defendants' malicious activity as a reason to deny venue to the victim is farcical.

Venue is proper in the Middle District of Florida. If Defendants did not want to be sued by Plaintiff in a different State, they should not have deliberately acted to forcibly expel him from his school, his profession, and the Eastern District of Louisiana.

III.    **Plaintiff's Claims Are Not Time-Barred Because Florida's Statute of Limitations Applies**

Florida's long-arm statute subjects non-residents to jurisdiction if they commit a tortious act within the State of Florida. Fla. Stat. Ann. § 48.193(1)(a)(2). The Causes of Action and the injuries were caused to Plaintiff by the Defendants' defamation and other tortious conduct in this district, Florida in general, nationwide, and internationally. Under Eleventh Circuit precedent, engaging in tortious activity outside Florida that results in injury within Florida is committing a tortious act in Florida. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1217 (11th Cir. 1999), quoted in *Silvers v. Verbata, Inc.*, No. 5:17-cv-169-Oc-34PRL, 2017 U.S. Dist. LEXIS 216293, at *9 (M.D. Fla. Dec. 1, 2017). Plaintiff has made a *prima facie* case showing that Defendants' defamatory statements were accessed by a third party in Florida, as required by Florida law. *Catalyst Pharm., Inc. v. Fullerton*, No. 17-15196, 2018 U.S. App. LEXIS 25115, at *5 (11th Cir. Sep. 5, 2018). Because the parties are subject to jurisdiction in Florida, Florida's Statute of Limitations applies, and the claims are not time-barred.

IV.    **The Complaint Makes the Allegations Necessary to State a Claim of Defamation**

"Defamation" may generally be defined as the unprivileged publication of false statements that naturally and proximately result in an injury to another. *IBP, Inc. v. Hady Enterprises, Inc.*, 267 F. Supp. 2d 1148, 51 U.C.C. Rep. Serv. 2d 950 (N.D. Fla. 2002), aff'd, 52 Fed. Appx. 487 (11th Cir. 2002). Under Florida law, defamation encompasses both libel and slander. Id.

The elements of a cause of action for defamation are: (1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff. *Bass v. Rivera*, 826 So. 2d 534 (Fla. Dist. Ct. App. 2d Dist. 2002). That defamation has the following five elements: (1) publication; (2) falsity; (3) the actor must act

11

with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098 (Fla. 2008).

In the present case, all Defendants (1) published false statements (2) about Plaintiff (3) to innumerable third parties, and (4) the falsity of those statements caused injury to the Plaintiff. Furthermore, the statements in question (1) were published (and continue to be published), (2) were false, (3) were made with knowledge as to the falsity of their statements and was obviously negligent, to say the least, (4) resulted in actual damages, and (5) were defamatory.

All of this has been alleged in the Complaint. In ruling on a motion to dismiss for failure to state a claim, the Court "must accept the allegations set forth in the complaint as true." *Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002); see also *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See *Omar ex. rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Dismissal would be particularly inappropriate here because a motion to dismiss "is not a procedure for resolving a contest about . . . the merits of the case." 5A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1356 at 294 (2d ed. 1990).

V.     **The Complaint Makes the Allegations Necessary to State a Claim of IIED**

In *Metropolitan Life Ins. Co. v. McCarson,* the Florida Supreme Court adopted the definition of the tort of intentional or reckless infliction of emotional distress as set forth in the *Restatement. Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277 (Fla. 1985). The elements of the tort are as follows:

(1)The defendant's conduct was extreme and outrageous.

(2)The defendant's conduct was intentional or reckless, in that the behavior was intended to cause emotional distress or that the defendant knew or should have known that such distress would follow.

(3)The conduct caused the plaintiff's emotional distress.

(4)The plaintiff experienced severe emotional distress.

In the present case, (1) the conduct of all Defendants was extreme and outrageous, (2) that extreme and outrageous conduct was entirely intentional, (3) the intentional, extreme, and outrageous conduct caused the Plaintiff emotional distress, and (4) the Plaintiff did, in fact, suffer severe emotional distress.

All of this has been alleged in the Complaint. In ruling on a motion to dismiss for failure to state a claim, the Court "must accept the allegations set forth in the complaint as true." *Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. *See Omar ex. rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Dismissal would be particularly inappropriate here because a motion to dismiss "is not a procedure for resolving a contest about . . . the merits of the case." 5A Wright & Miller, Federal Practice & Procedure § 1356 at 294 (2d ed. 1990).

## VI.    The Complaint Makes the Allegations Necessary to State a Claim of Tortious Interference

The elements of a cause of action for tortious interference with contractual relations are:

(1) The existence of a contract

(2) The defendant's knowledge of the contract

(3) The defendant's intentional procurement of the contract's breach

(4) Damages that result from the breach

*Rubin, P.A. v. Alarcon*, 892 So. 2d 501, 503 (Fla. 3d DCA 2004).

In the present case, (1) a contract existed between Plaintiff and Crescent Leadership Academy, (2) Defendants knew about this contract, as evidenced in their statements, (3) Defendants intentionally procured a breach of that contract, and (4) damages resulted from that breach of contract, including his termination, his blacklisting from the profession, and his move to Florida.

All of this has been alleged in the Complaint. In ruling on a motion to dismiss for failure to state a claim, the Court "must accept the allegations set forth in the complaint as true." *Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. *See Omar ex. rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Dismissal would be particularly inappropriate here because a motion to dismiss "is not a procedure for resolving a contest about . . . the merits of the case." 5A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1356 at 294 (2d ed. 1990).

Also, Defendant ALM claims that Plaintiff was terminated before the publication of Defendant's Opinion article. This is incorrect. The Opinion article was published 26 May 2017; the letter of termination to Plaintiff was 30 May 2017. *See* Exhibit A, Rite of Passage to Dean.

Finally, even had those events been reversed, the claim would still stand, as Defendant intended the blacklist of Plaintiff from the entire profession, as evidenced by the following statement:

> That's not to say that Nicholas Dean, the now former principal of Crescent Leadership Academy, should be in charge of a predominantly white student body.  If he's going to dress up like a Nazi and talk Nazi talk, then he should be kept as far away from all children, regardless of their race or ethnicity.

Jarvis DeBarry, Principal in Nazi gear is gone, just like the monuments he supported: Opinion,

NOLA.COM (May 26, 2017).

## VII.    The Complaint Makes the Allegations Necessary to State a Claim of Assault

Assault is an intentional threat of bodily harm, coupled with an apparent present ability to

cause injury that arouses fear of the injury in the victim. *See Lay v. Kremer*, 411 So. 2d 1347

(Fla. 1st DCA 1982). As for intent, a defendant must intend either to physically injure the

plaintiff or to cause the plaintiff to fear bodily injury. See Id. As for apprehension of harm, a

plaintiff may prevail in an action for assault if his or her fear of bodily harm was reasonable

under the circumstances. *Thomas v. Wyatt*, 405 So. 2d 1369 (Fla. 4th DCA 1981). Florida

decisions do not define "reasonable" fear, *see, e.g.*, *Thomas v. Wyatt*, 405 So. 2d 1369 (Fla. 4th

DCA 1981); *Winn & Lovett Grocery Co. v. Archer*, 126 Fla. 308, 171 So. 214 (1936), but it has

elsewhere been defined as fear that would normally be aroused in the mind of a reasonable

person under the same or similar circumstances. *See* Prosser and Keeton on Torts § 10 (West 5th

ed. 1984).

In the present case, Defendants' publication of the defamatory statements have placed

Plaintiff's life at risk by revealing and disclosing him to public notice by Antifa, which has been

identified by the Office of Homeland Security as a terrorist organization, and other violent

terrorist groups, in Florida, domestically, and internationally. Antifa has openly pledged to

terrorize and inflict bodily harm upon persons identified as "Nazis." Defendants have subjected

Plaintiff to an open call that any and all militant Antifa should kill or do bodily harm to Plaintiff.

Defendants have placed Plaintiff in immediate fear of bodily harm, injury, and death to him and

his family members. Defendants' tortious actions were furthered and aided and abetted by

members of the press who want to destroy Plaintiff as a perceived member of a group vilified by the public.

All of this has been alleged in the Complaint. In ruling on a motion to dismiss for failure to state a claim, the Court "must accept the allegations set forth in the complaint as true." *Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. *See Omar ex. rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Dismissal would be particularly inappropriate here because a motion to dismiss "is not a procedure for resolving a contest about . . . the merits of the case." 5A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1356 at 294 (2d ed. 1990).

## VIII. Florida's Single Action and Single Publication Rules Have Absolutely Nothing to Do with This Case

Defendants note that the single publication or single action rule "precludes the recasting of defamation claims as additional, distinct causes of action in tort if all of the claims arise" from the same defamatory publication. This statement on the "single action rule" is inaccurate as portrayed in the Motions to Dismiss. This rule does not forbid a basic legal action but rather speaks to the doctrine of res judicata, the principle that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. *Res judicata*, BALLENTINE'S LAW DICTIONARY (2019). Plaintiff is certainly not prevented from bringing multiple causes of action against Defendants in his Complaint.

16

The single publication rule allows a plaintiff to institute a single action against the publisher of a defamatory statement who released multiple copies of the statement at one time. *See generally First America Development Corp. v. Daytona Beach News Journal Corp.*, 196 So. 2d 97 (Fla. 1966). Thus, a plaintiff may recover damages suffered in more than one state by means of one suit. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984). The single publication rule is an expression of the general rule that all causes of action for widely circulated libel must be litigated in one trial, and that each publication need not be separately pleaded and proved. *See Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 200 So. 3d 173, 175 (Fla 5th DCA 2016).

Florida's single publication act provides that a cause of action accrues at the time of first publication within the state. Fla. Stat. § 770.07. Two limitations on a cause of action are imposed by the single publication rule: (1) only one suit is permitted in one venue to avoid multiple suits on the one cause of action; and (2) a statute of limitations applies to the time for filing the action, which is deemed to have accrued at the time of first publication. *Perdue v. Miami Herald Pub. Co.*, 291 So. 2d 604, 606 (Fla. 1974). The single publication act does not control venue, but relates to the time of accrual of the cause of action. *Id.*

Defendants cite the case of *Int'l Sec. Mgmt. Grp., Inc. v. Rolland*, 271 So. 3d 33, 48 (Fla. Dist. Ct. App. 2018), reh'g denied (Feb. 28, 2019) (citing *Fridovich v. Fridovich*, 598 So.2d 65, 69 (Fla. 1992), quoting: "It is clear that a plaintiff is not permitted to make an end-run around a successfully invoked defamation privilege by simply renaming the cause of action and repleading the same facts." The underlying case there regarded a man who was accused of making a bomb threat. He was reported to the police by the employees of New World Tower. He sued under defamation and negligent reporting of a crime**.** The court, in that case, cited *Fridovich*

*v. Fridocih*, another case regarding reports made to the police. Here, the court found the defendants to have an absolute privilege for defamation. Thus, even though *Fridovich* brought a claim of IIED with his defamation claim, he could not "make an end-run around a successfully invoked defamation privilege by simply renaming the cause of action and repleading the same facts. Obviously, if the sole basis of a complaint for emotional distress is a **privileged** defamatory statement, then no separate cause of action exists." *Fridovich v. Fridovich*, 598 So.2d 65, 69 (Fla. 1992) (emphasis added). The citation in context reveals the truth. This rule regards the court hearing other torts brought with a privileged defamation claim, which is completely irrelevant to the present case, especially because there is no privileged communication in question.

Defendants seek dismissal of Plaintiff's Fourth Cause of Action (intentional infliction of emotional distress), Fifth Cause of Action (tortious interference), and Sixth Cause of Action (assault), stating that the "claims arise from the same allegedly defamatory publication." This is incorrect. There are separate elements to each of the offenses that make each Cause of Action a separate matter.

Concerning the Fourth Cause of Action, intentional infliction of emotional distress, Plaintiff has alleged that Defendants intended to inflict emotional distress by publicizing their vicious attacks. While those attacks were incontrovertibly false and defamatory, the question of Defendants' intentional infliction of emotional distress upon Plaintiff is clearly a separate issue.

Concerning the Fifth Cause of Action, tortious interference, both Defendant Easterling and Advance Local Media, through its writer, Jarvis DeBarry, clearly intended to have Plaintiff blacklisted from the educational profession. While this is tied to their defamation of Plaintiff, their intent to ensure that he never worked as an educator again stands as a separate offense.

18

Concerning the Sixth Cause of Action, assault, Plaintiff has alleged that Defendants' statements were made with the specific intent not only to defame him and to blacklist him from the educational profession, but also to have him assaulted by violent leftists, especially the Antifa. This is clearly not an element of a defamation charge, and the allegation clearly established a separate cause of action.

The fact that Defendants defamed Plaintiff with the full intention of having him blacklisted from the educational profession and hoping that others would assault him based on the defamation means that Defendants are rightly charged with defamation, tortious interference, assault, and intentional infliction of emotional distress. These are four separate offenses that, unfortunately, share a common source; but the fact that they share a common source does not mean that Defendants should be allowed to skate free *because* they intentionally caused a great deal of damage.

Defendants argue at length that the defamatory speech at issue is protected by the First Amendment. This is clearly false, but more to the point, the First Amendment does not cover speech deliberately intending to blacklist a man from his profession or fashioned to make a man the target of violent criminals like the Antifa.

Defendant Advance Local Media cites *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, arguing that "[t]he U.S. Supreme Court has made explicit . . . that First Amendment-based safeguards govern all claims seeking to recover damages for reputational injury from a publication, not only defamation claims." Defendant fails to mention that the case of Hustler v. Falwell was decided so because Jerry Falwell was a public figure, and Hustler Magazine's caricature of Falwell was protected First Amendment speech. Here, Plaintiff Dean is not a public figure and certainly was not at the time of the defamation in question. Furthermore, while a

demonstration of actual malice is not required in cases concerning private actors, it is clear that both Defendant Easterling and the writer for the Times-Picayune made their statements with actual malice for someone they wanted crucified as a Nazi.

## CONCLUSION

Defendants are subject to the personal jurisdiction of this Court, and venue is proper. Because Plaintiff is a resident and citizen of Florida and has been since the summer of 2017 *because of* the bad actions of Defendants, and because he was a Florida citizen at the time the present action was filed, Florida law applies, and therefore the action is not time-barred under the statute of limitations. Furthermore, Defendants have not met their heavy burden of proving that Plaintiff failed to state claims of Defamation, Intentional Infliction of Emotional Distress, Tortious Interference, and Assault. Accordingly, the Court should deny the Motions to Dismiss in all respects and set a discovery schedule that will allow resolution of this case.

Dated: December 3, 2019                          Respectfully submitted,

<u>/s/ Augustus Invictus</u>
Augustus Invictus, Esq. – Trial Counsel
Florida Bar No. 98586
The Law Office of Augustus Invictus, Esq.
424 E. Central Blvd., Ste. 154
Orlando, Florida 32801
Phone: (310) 824-3725
Email: InvictusPA@protonmail.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 03 December 2019, I filed the foregoing document with

the Clerk of Court via the CM/ECF system, which will send a notice of electronic filing via

email to:

Katie Schwartzmann, Louisiana Bar Roll No. 30295
The American Civil Liberties Union-F of Louisiana
P.O. Box 56157
New Orleans, La 70156
(504) 522-0628 x 125
kschwartzmann@laaclu.org
Attorney for Defendant Easterling

Andrew M. Bonderud, Esq.
Florida Bar No. 102178
301 W. Bay Street, #1433
Jacksonville, FL 32202
(904) 438-8082 (Office)
(904) 800-1482 (Facsimile)
BonderudLaw@gmail.com
Andrew@Jax.Lawyer
Attorney for the Defendant Easterling

Charles D. Tobin, Esq.
Ballard Spahr LLP
1919 K St. NW, 12th Floor
Washington, DC 20006
TobinC@ballardspahr.com
Counsel for Defendant Advance Local Media, LLC

/s/ Augustus Invictus
Attorney for Plaintiff
